# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

SYNERGY MANAGEMENT, LLC                         CIVIL ACTION

VERSUS                                          20-850-SDD-EWD

WDM, INC. ET AL

### RULING

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendants, WDM, Inc. d/b/a Wood Designs ("Wood Designs") and Ryan Urban ("Urban") (collectively "Defendants"). Plaintiff Synergy Management, LLC ("Synergy") filed an *Opposition*,[2] to which Defendants filed a *Reply*.[3] For the following reasons, Defendants' *Motion*[4] shall be granted.

## I.   BACKGROUND

This is a trademark infringement case. The following facts are derived from the *First Amended Complaint*.[5] Synergy is a Louisiana company that manufactures play tables for children.[6] Wood Designs allegedly manufactures infringing play tables under the watchful eye of its Chief Executive Officer, Urban.[7] The play tables are colored tabletop surfaces for use with interconnecting blocks and toys.[8] The table surface is either divided into four colors which are red, yellow, blue, and green ("the Four-Color Design")

---

[1] Rec. Doc. No. 17.
[2] Rec. Doc. No. 20.
[3] Rec. Doc. No. 21.
[4] Rec. Doc. No. 17.
[5] Rec. Doc. No. 12.
[6] *Id*. at 3.
[7] *Id*. at 2.
[8] *Id*. at 3.

or divided into red and yellow or blue and green halves ("the Two-Color Design").[9] At the center of the tabletop is a rectangular hole and a colorful mesh bag below that hole, typically in red or blue.[10] The pictures within the *First Amended Complaint* show that the mesh bag stores the interconnecting blocks.[11]

Synergy asserts that it has intellectual property rights as to the table designs. Synergy avers that is it the exclusive owner of both designs and has the exclusive right to distribute them.[12] Synergy has a registered trademark in its Four-Color Design.[13]

In 2013, Synergy's predecessor-in-interest, Fantasy Toys, Inc. d/b/a Flexitoys contracted with Wood Designs for Wood Designs to manufacture play tables on Flexitoys's behalf.[14] Wood Designs agreed not to utilize the designs for its own purposes.[15] As part of that agreement, Wood Designs manufactured 100 tables for Flexitoys in 2013.[16] In February 2014 and in July 2018, Wood Designs, through Urban, negotiated directly with Synergy for Wood Designs to manufacture the play tables for Synergy.[17] These negotiations were unsuccessful, allegedly, and "[a]fter these negotiations fell through…, Wood Designs took Synergy's designs and began selling competing play tables using the identical designs that were provided to Wood Designs from Flexitoys and Synergy."[18] The *First Amended Complaint* does not specify after which round of negotiations Wood Designs began selling competing tables, so it is unclear from

---

[9] *Id*.
[10] *Id*.
[11] *Id*.
[12] *Id*. at 4.
[13] *Id*.
[14] *Id*. at 5.
[15] *Id*. at 6.
[16] *Id*.
[17] *Id*.
[18] *Id*.

the face of the *First Amended Complaint* whether Defendants allegedly began infringing in 2014 or 2018.[19]

Synergy further alleges that Wood Designs's products are confusingly similar, and Wood Designs has continued to sell its products despite full of knowledge of Synergy's superior rights to the designs.[20] Synergy asserts that Wood Designs's use of Synergy's designs deceives consumers who may think they are purchasing Synergy products.[21] Synergy avers that Urban directed all of the infringing actions.[22]

Synergy sued Wood Designs, and Urban personally, asserting causes of action for: (1) counterfeiting under the Lanham Act, (2) trademark infringement under the Lanham Act, (3) false designation of origin under the Lanham Act, (4) a violation of Louisiana Civil Code article 2315, (5) unfair trade practices under La. R.S. § 51:1409, (6) trademark infringement under La. R.S. § 51:222, (7) trademark dilution under La. R.S. § 51:222.1, and (8) breach of contract.[23]

## II.     LAW AND ANALYSIS

### A.     Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[24] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[25] "To

---

[19] *Id*. at 6.
[20] *Id*. at 8.
[21] *Id*.
[22] *Id*.
[23] *Id*. at 8–13.
[24] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[25] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[26]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[27] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[28] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[29] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[30] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[31] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[32]

---

[26] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).
[27] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).
[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)( internal citations omitted )(hereinafter "*Iqbal*").
[29] *Id*.
[30] *Id*.
[31] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099 at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[32] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

### B.      Laches, Prescription, and the Continuing Tort Doctrine

Defendants argue that Synergy's trade dress claim is barred by laches since, as Defendants characterize the allegations in the *First Amended Complaint*, Synergy knew that Defendants were manufacturing allegedly infringing play tables as early as February 2014.[33] Defendants also argue that all of Synergy's non-contractual claims are prescribed, regardless of the application of laches.[34] In response, Synergy characterizes the *First Amended Complaint* as asserting that the infringing activity did not occur until sometime after July 2018 and relies on the continuing tort doctrine to avoid prescription.[35]

"Laches comprises three elements: (1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay."[36] "Laches is an inexcusable delay that results in prejudice to the defendant."[37]

As to laches, Synergy's argument is weak. The *First Amended Complaint* provides:

[Paragraph] 23. In February of 2014 and then again in July of 2018, Wood Designs, through Ryan Urban, entered into negotiations directly with Synergy. Specifically, Wood Designs provided Synergy with price quotes for Wood Designs to manufacture on Synergy's behalf children's play tables featuring Synergy's Product Designs.

[Paragraph] 24. After these negotiations fell through, however, Wood Designs took Synergy's designs and began selling competing play tables using the identical designs that were provided to Wood Designs from Flexitoys and Synergy.[38]

---

[33] Rec. Doc. No. 17, p. 13–17.
[34] Rec. Doc. No. 17 p. 13–17.
[35] Rec. Doc. No. 20, p. 9–12.
[36] *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 490 (5th Cir. 2008) (citations omitted).
[37] *Id*.
[38] Rec. Doc. No. 12, p. 6.

The *First Amended Complaint* suffers from a vague pronoun antecedent. The pronoun "these" in paragraph 24 refers to its antecedent noun "negotiations" in paragraph 23, which in turn refers to the negotiations that occurred in both February 2014 and July 2018. Therefore, it is impossible to determine after which negotiations Wood Designs began selling competing tables, and Synergy's refinement of the language of the *First Amended Complaint* in its *Opposition* cannot save it, as it is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."[39] However, Defendants have failed to provide argument as to how they are prejudiced by the length of the delay, however long it was, so the Court will assume for the purposes of this *Ruling* that laches does not apply to Synergy's trade dress claims.

Defendants also argue that, notwithstanding laches, all of Synergy's non-contractual claims are prescribed. First, the Court must determine the prescription period for each claim. The Lanham Act does not contain a statute of limitations, but "'[w]here there is need of a statute of limitation in a suit based on the [f]ederal Lanham Act, courts will look to the relevant forum state statute which best effectuates the federal policy at issue."[40] Louisiana federal courts routinely apply the prescriptive period found in the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), which is one year.[41] Therefore, Synergy must have brought its Lanham Act claims (Counts I–III) within one year of the challenged conduct.

---

[39] *Jimenez v. Wal–Mart Stores Texas, LLC*, 2013 WL 12129929, at *5, n. 8 (W.D. Tex. July 25, 2013).
[40] *Snowizard, Inc. v. Robinson*, 2011 WL 2681197, at *9 (E.D. La. July 8, 2011) (quoting 6 McCarthy on Trademarks and Unfair Competition § 31:23 (2011)).
[41] See *Id*; *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780, 790 (E.D. La. 2012); La. R.S. § 51:1409(E).

Likewise, Synergy's claim under Louisiana Civil Code article 2315 (Count IV) is subject to a one-year prescription period,[42] as is Synergy's LUTPA claim (Count V).[43] Synergy's trademark actions under Louisiana law (Counts VI and VII) are delictual in nature,[44] and as such are subject the one-year prescriptive period provided by Louisiana Civil Code article 3492. Assuming[45] Synergy's breach of contract claim (Count VIII) is governed by Louisiana law, the prescriptive period for that claim is ten years.[46]

Synergy filed suit in December 2020, so on the face of the *First Amended Complaint*, all of Synergy's non-contractual claims are prescribed regardless of whether Defendants infringed in February 2014 or July 2018. But Synergy invokes the continuing tort doctrine in an effort to save its non-contractual claims. Although Defendants would normally bear the burden of proving Synergy's non-contractual claims have prescribed, since Synergy's non-contractual claims are prescribed on the face of the *First Amended Complaint*, Synergy bears the burden of pleading the continuing tort doctrine.[47]

The continuous tort doctrine treats continual unlawful acts as creating successive causes of action for each additional unlawful act.[48] The doctrine does not apply to continuing damages caused by an original unlawful act, even if those damages

---

[42] La. Civ. Code art. 3492.
[43] La. R.S. § 51:1409(E).
[44] See *Langlois v. Allied Chem. Corp.*, 258 La. 1067, 1074–1075, 249 So. 2d 133, 136–137 (1971).
[45] The Court assumes that Louisiana law governs Synergy's breach of contract claim for the purposes of this *Ruling* since Synergy pled breach in violation of La. Civ. Code art. 1995, however, Synergy has not pled where the contract was formed or given the Court any indication as to why Louisiana law would govern the contract.
[46] *Russ v. City of New Orleans*, (La. App. 4 Cir. 8/28/19), 279 So. 3d 1006, 1009, *writ not considered*, 2019-01539 (La. 11/19/19), 282 So. 3d 1063, *reconsideration denied*, 2019-01539 (La. 1/22/20), 291 So. 3d 1039.
[47] *In re Med. Rev. Panel for Claim of Moses*, (La. 5/25/01), 788 So. 2d 1173, 1177.
[48] *Id*. at 1183.

progressively worsen.[49] Therefore, a plaintiff must plead ongoing, successive violations of law—one of which must fall within the prescriptive period.

Synergy relies entirely on the following statement from the "Jurisdiction and Venue" subsection of the *First Amended Complaint* in support of its argument that it has properly pled a continuing tort:[50] "[u]pon information and belief, Defendants are currently advertising, selling, and distributing infringing goods within the Middle District of Louisiana."[51] The issue before the Court is whether that allegation is sufficient to plausibly allege a continuing tort.

The Court finds that it is not for two reasons. First, while the Fifth Circuit has allowed parties to plead "on information and belief" in situations where the alleged fact is peculiarly in the hands of the defendant, the current case is inapposite. If, as Synergy alleges, Defendants are currently advertising and selling goods in this District (or anywhere else for the purposes of the continuing tort doctrine), Synergy could investigate and confirm those activities with ease, which would obviate the need to plead "on information and belief." Second, the statement from the *First Amended Complaint* does not meet the *Twombly/Iqbal* standard. Under Supreme Court precedent, while Synergy need not plead "detailed factual allegations," Synergy must plead more than conclusory statements or "threadbare recitals" of the elements of the continuing tort doctrine.[52] The allegation that Synergy relies on, bare of specificity, merely states that Defendants are

---

[49] *Id*.
[50] "Here, nothing in the Complaint even remotely suggests that the infringing activity ceased more than a year prior to the filing of the suit. To the contrary, the Complaint alleges that the violations are actively ongoing ('Defendants are currently advertising, selling, and distributing infringing goods…'). Because the violations asserted in the lawsuit are still ongoing, the statute of limitations has not begun to run." Rec. Doc. No. 20, p. 11.
[51] Rec. Doc. No. 12, p. 2–3.
[52] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1966).

currently infringing. It is an insufficient "naked assertion devoid of further factual enhancement" that fails to properly plead the continuing tort doctrine.[53] Synergy has failed to plead a continuing tort, and as such, all of its non-contractual claims have prescribed and must be dismissed.

### C. Breach of Contract

Synergy alleges that Defendants breached a contract not to utilize Synergy's designs. Although the allegations in the *First Amended Complaint* are scant as to this cause of action, the Court will assume for the purposes of this *Ruling* that Louisiana law applies. Defendants argue that Synergy alleges that a contract was never reached between the parties.[54] Synergy asserts that the contract in question was actually between Synergy's predecessor-in-interest, Flexitoys, and Defendants, and as such, Synergy can sue for a breach of that contract.[55]

Synergy's breach of contract claim must also be dismissed. The *First Amended Complaint* alleges a contract between Flexitoys and Defendants not to utilize Flexitoys's designs "and/or manufacture or sell competing designs."[56] However, Synergy asks the Court to make a logical leap that the facts alleged in the *First Amended Complaint* do not support. The existence of a contract between Defendants and Synergy's predecessor-in-interest creates the possibility that Synergy could enforce that contract, but without the terms of the contract and details of Synergy's takeover of Flexitoys, the Court cannot plausibly infer that the rights under the alleged contract flow to Synergy. There are simply

---

[53] *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966) (internal quotation marks omitted). For example, Synergy fails to allege whether Defendants are currently infringing on the Four-Color Design, the Two-Color Design, or both.
[54] Rec. Doc. No. 17, p. 22.
[55] Rec. Doc. No. 20, p. 19–20.
[56] Rec. Doc. No. 12, p. 6.

no allegations in the *First Amended Complaint* from which the Court can make the inference that Synergy plausibly has rights under its predecessor-in-interest's contract. Therefore, Synergy's breach of contract claim against Defendants must be dismissed.

## III.     CONCLUSION

For the reasons provided above, all of Synergy's claims must be dismissed. Defendants' *Motion*[57] is therefore granted, without prejudice. Synergy will have 21 days from the date of this *Ruling* to amend the *First Amended Complaint* to cure the deficiencies set forth above. Failure to comply with this deadline will result in dismissal with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>July 20, 2021</u>.

*/s/ Shelly D. Dick*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[57] Rec. Doc. No. 17.

68250